```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>TAREQ MOUSA AL GHAZI,<br><br>Defendant. | 07-cr-354 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

On November 4, 2024, this Court denied the initial pro se motion of defendant Tareq Mousa Al Ghazi for compassionate release pursuant to 18 U.S.C. § 3582(c) for failure to exhaust administrative remedies. (Dkt. 219). Now before the Court is Al Ghazi's renewed pro se motion for compassionate release dated December 28, 2024. (Dkt. 222) ("Mtn."). Although the prior exhaustion problem has now been cured, Al Ghazi's compassionate release motion is nevertheless denied on the merits for the reasons set forth in this Memorandum Order.

## DISCUSSION

In March 2009, the jury convicted Al Ghazi of three serious conspiracies, including a conspiracy to kill officers and employees of the United States, a conspiracy to unlawfully acquire and use anti-aircraft missiles, and a conspiracy to provide material support to a foreign terrorist organization. See United States v. al Ghazi, No. S307CR354(JSR), 2009 WL 1605741, at *1 (S.D.N.Y. June 9, 2009); Government Opposition to Al Ghazi's compassionate Release Motion, at 3 (Dkt. 225) ("Gov't Opp."). This conviction arose in the context of

1

Al Ghazi conspiring with Monzer Al Kassar, an international arms dealer, and Al Kassar's assistant, Luis Felipe Moreno Godoy "to provide Fuerzas Armadas Revolucionarias de Colombia ("FARC"), an international terrorist group, with millions of dollars worth of weapons to be used to kill United States nationals in Colombia." United States v. Al Kassar, 582 F. Supp. 2d 488, 491 (S.D.N.Y. 2008). Al Ghazi played a key role in putting that deal together. Gov't Opp. at 3. And like Al Kassar, Al Ghazi was no novice to international arms trafficking. To the contrary, he had worked alongside Al Kassar for 30 years on brokering global purchases of large quantities of illegal weapons. Id. at 1. Further, in the 1980s, Al Ghazi also smuggled large quantities of weapons from Eastern Europe to Yemen for use by the Palestinian Liberation Front ("PLF"), a designated terrorist organization. Id. at 1-2. Considering the gravity of his crimes, this Court exercised lenity in sentencing Al Ghazi to 25 years in prison in July of 2009. See United States v. Godoy, No. 07 Cr. 354 (JSR), 2022 WL 2195330, at *2 (S.D.N.Y. June 17, 2022). Al Ghazi, now 78, is serving his sentence in the Federal Correctional Institute, Otisville ("F.C.I. Otisville").

The compassionate release statute "provides that after certain administrative exhaustion requirements are met, the Court may reduce a defendant's sentence if it finds that (1) extraordinary and compelling reasons warrant such a reduction and (2) the 18 U.S.C. § 3553(a) factors weigh in favor of a reduction." United States v. Halliburton, No. 20-CR-499 (JSR), 2024 WL 3014179, at *1 (S.D.N.Y. June 13, 2024). In his motion, Al Ghazi alleges that he suffers from

a host of ailments, including an aortic abdominal aneurism, a condition that occurs when an artery in the abdomen becomes enlarged and weakened and thus at risk of a rupture; hypertension; gastroesophageal reflux; coronary artery disease; hyperlipidemia; and unstable angina pectoris, a condition that produces pain when an individual's heart muscle is not receiving enough oxygen. Mtn. at 6-7. Based on these facts, Al Ghazi raises the following three grounds for a sentence reduction under U.S.S.G. § 1B1.13(b). That statute identifies circumstances in which a defendant's medical condition qualifies as "extraordinary and compelling reasons" pursuant to the following sections:

- Section 1B1.13(b)(1)(B)(iii), applicable where the defendant is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";
- Section 1B1.13(b)(2), applicable where "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less";
- Section 1B1.13(b)(6), applicable where a defendant received "an unusually long sentence," has served at least 10 years of that sentence, and a subsequent change in law creates a

3

>"gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

Because Al Ghazi is more than 65 years old and has served more than 10 years of his sentence, the crux of his argument under Sections 1B1.13(b)(1)(B)(iii) and 1B1.13(b)(2) is the seriousness of his medical condition. And among the ailments that Al Ghazi complains of, his aortic abdominal aneurism is the most serious one. However, the evidence Al Ghazi submitted in support of his motion shows that the Bureau of Prisons ("BOP") is actively managing this condition. Specifically, Al Ghazi's medical records show that he received an aortic aneurism repair in September of 2024 and his follow-on issues were managed by further exams and medication. See Mtn. at 64-73; 95-107. The record also demonstrates that his other, predominately old-age-related conditions are being managed by BOP through regular medical exams and medication. See, e.g., 27-33.

Accordingly, Al Ghazi's medical condition does not constitute the kind of "serious deterioration in physical and mental health" required by § 1B1.13(b)(2). See, e.g., United States v. Borelli, No. 84-cr-63 (LAP), 2021 WL 2228075, at *3 (S.D.N.Y. June 2, 2021) (denying compassionate release where defendant "offered no indication that his medical conditions cannot be managed — or, for that matter, are not already well controlled — through BOP-provided medical care"); United States v. Gotti, 433 F. Supp. 3d 613, 617, 619 (S.D.N.Y. 2020) (denying release for 79-year-old defendant suffering from hypothyroidism,

4

hyperlipidemia, gout, glaucoma, left eye blindness, hypertension, ischemic cardiomyopathy, heart failure, chronic obstructive pulmonary disease, esophageal reflux, and chronic atrial fibrillation); <u>United States v. LoCascio</u>, No. 90-cr-1051, 2020 WL 12719849, at *2, *4-6 (E.D.N.Y. July 17, 2020) (denying compassionate release to an 87-year-old defendant where BOP was able to manage the defendant's chronic kidney disease, coronary artery disease, and heart failure that left him in "chronic pain, dependent on oxygen and confined to a wheelchair"). For substantially the same reasons, Al Ghazi has not shown that his medical condition amounts to deterioration that "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility" and "from which he . . . is not expected to recover," as required by Section 1B1.13(b)(1)(B).

Al Ghazi urges that he is nevertheless in impending medical danger because his prison cell does not have a panic button that he could press in case of an adverse medical event at night, meaning that if his enlarged aorta were to rupture at night, he would potentially not be able to receive timely medical care. <u>See</u> Mtn. at 6. But this argument is not only hypothetical but also unsupported by the evidence. As Al Ghazi himself admits, the inmates at F.C.I. Otisville are continuously monitored by a BOP officer, even at night. <u>Id.</u> And the medical records submitted by Al Ghazi in support of his motion indicate that he had received emergency medical treatment on multiple occasions despite his asserted fears. <u>See, e.g.</u>, Mtn. at 48 (record of medical

visit due to "intermittent chest pain" in June of 2024); 64 (same in September of 2024).

With regard to Section 1B1.13(b)(6), applicable in circumstances where a defendant received "an unusually long sentence," where he has served at least 10 years of that sentence, and where a subsequent change in law creates a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," Al Ghazi argues that the Supreme Court's decision holding that conspiracy is not a crime of violence created such a sentencing disparity in his case. See United States v. Davis, 588 U.S. 445 (2019). Mtn. at 8-9. But as the Government argues, and this Court agrees, Davis is plainly inapplicable here because Al Ghazi's convictions were not predicated on him having committed a "crime of violence." Opp. at 6-7.

Finally, even assuming arguendo that Al Ghazi could show that his circumstances constitute "extraordinary and compelling" reasons that warrant a sentence reduction, the Court nevertheless concludes that nearly all of the 3553(a) factors counsel strongly against a reduction. Al Ghazi argues, in essence, that a sentence reduction is appropriate here because he has already served a significant portion of his sentence and further, because he is unlikely to recidivate due to his old age and bad health. Mtn. at 10-11. Although he now expresses guilt over his past conduct, that is insufficient to outweigh the seriousness of Al Ghazi's crimes for which a 25-year sentence was appropriate and indeed, lenient. And contrary to Al Ghazi's assertion, good health is

not necessary to traffic weapons, particularly for someone with decades of experience in the international arms trafficking enterprise like Al Ghazi. In fact, Al Ghazi was already 60 when he assisted Al Kassar with what he believed was a deal with a terrorist organization targeting Americans abroad. There is therefore nothing that would prevent him from re-activating his global network of arms-trafficking contacts after his release and deportation. Accordingly, the Court concludes that the seriousness of Al Ghazi's crimes, his criminal history, the goals of specific and general deterrence, and the need to protect the public from danger independently weigh against a sentence reduction in this case.

For the foregoing reasons, Al Ghazi's motion for compassionate release is hereby DENIED. The Clerk is directed to close Dkt. 222.

SO ORDERED.

New York, NY
March 26, 2025

_____
JED S. RAKOFF, U.S.D.J.

7